## Case No. 11,482.

### PUTNAM v. The POLLY.

[Bee, 157.] [1]

District Court, D. South Carolina. July, 1800.

#### BOTTOMRY—NECESSITY.

The lender of money on bottomry must inform himself whether the alleged necessity exists. If not, he loses his specific lien on the vessel.

[Cited in Greely v. Smith. Case No. 5,750.]

In admiralty.

BY THE COURT. This is a suit instituted on a deed of hypothecation given by David Gifford, master of the schooner Polly to the actor, John Putnam, for 500 dollars, and dated at Kingston in Jamaica on the 5th day of May last. A claim has been interposed by William Whitman, as owner of the said schooner by virtue of a bill of sale from I. I. Hildrup, dated 20th November last, given to secure payment of money advanced for said Hildrup; and states that, if any such deed of hypothecation existed, it must have originated in fraud. Claimant therefore, prays that his claim may be established, and the libel dismissed. It appears from the evidence produced in the cause, that the schooner Polly sailed from Savannah with a cargo of lumber, and arrived at Kingston in Jamaica, in April last. That the cargo was addressed to the house of Davis and Co. who sold the same; but refused to advance money to the captain, to enable him to return home, alleging that Hildrup had already drawn on them for more

---

1 [Reported by Hon. Thomas Bee, District Judge.]

than the amount of the consignment. It appeared also that Gifford, thus situated, had applied several times to Putnam, the actor in this cause, to assist him with money, as he could not proceed to sea without it. Several witnesses agree in this, and prove that Putnam consented to advance money, if he could obtain good security. Two of the witnesses swear that they saw the paper, called a bottomry bond, brought by Captain Putnam on board his vessel. One of them looked over it, and swears that this is the same. It appears from the exhibits that Putnam had money in the hands of Davis and Co. to whom this vessel was addressed; and that they advanced different sums to Gifford, and charged Putnam with 500 dollars, so advanced. In their account against the schooner Polly, they also give credit for that sum, as borrowed of Putnam for the above purpose. It appears from these papers that this charge is dated in the schooner's accounts on the 2d May; in Putnam's on the 5th. The deed of hypothecation is dated May 5. But Captain Gifford, it is proved, was buried on the 1st of May; so that, according to these statements, the deed bears date four days after Gifford's death. It states that the advance was made to Gifford by and with the advice and consent of the officers and men of his vessel, which was completely repaired, and furnished with necessaries for the return voyage, to the amount of 500 dollars. The seamen contradict this; say that the schooner received no repairs in Jamaica; and deny that they were ever consulted upon the subject.

In arguing the cause, it was contended, on the part of the claimant, that this deed was founded in fraud and collusion. That the master of a vessel cannot, in every case, impawn her. To this point Viner was quoted. 14 Vin. Abr. 329. That the deed, being fraudulent in part, must be considered altogether so. That Whitman's bill of sale was of a prior date, and that his lien must be preferred. On the other side it was contended that Putnam actually advanced the money, by which he was to gain nothing. And that a mere miscalculation as to the sum ought not to vitiate the deed. That the deed was not fraudulent in its origin, and cannot become so by subsequent circumstances. Parol proof, it was said, could not be admitted to contradict it; but, the execution of it being acknowledged, it must have operation according to its tenor.

I have, in several former cases, declared what I conceive to be the marine law as to hypothecation; particularly in the case of O'Hara v. The Mary [Case No. 10,467]. It is laid down in 3 Mod. 244, that the true grounds of a maritime hypothecation are necessity, and the want of personal credit. The reason of the civil law which allows the pawning of a ship on the high seas, or in foreign parts, seems to be plain, viz. that there may be circumstances of invincible necessity; and of this the court of admiralty shall

judge. Otherwise, the master's power to borrow money, and pledge the ship for repayment, would be unlimited and ruinous. Liebart v. The Emperor [Case No. 8,340] is full to this point, and that was a case on appeal. In the present case, it appears that only part of the money advanced by Putnam was for the use of the vessel; that no consultation was ever had with the mariners. That Putnam gave an order for the sum in question without informing himself, as he was bound to do, whether it was necessary for the vessel, or not. No repairs were made in Jamaica. But as it appears that the captain had no personal credit, and could not put to sea without some advance, I am of opinion that, so far as this money answered that necessary purpose, it must be considered as a lien on the ship. It would be so, by an implied hypothecation, if no deed existed. I see neither fraud, nor collusion, on Putnam's part; but, if he was not ignorant of what the marine law requires in these cases, he was extremely inattentive to it. It appears by the exhibits that a great part of this sum of 500 dollars was expended for the charges of Captain Gifford's sickness and funeral. The vessel cannot be made liable for this. Davis and Co. had no right to apply the money in this way; they must settle that with Putnam. As to Whitman's claim under the bill of sale, it can have no weight; because his money was not advanced for this vessel; at least, not in a foreign port.

Upon the whole, I decree that Captain Putnam be reimbursed such sums as he advanced to enable the captain of this schooner to proceed to sea; and no more.